WILLIAMS, J.
 

 fThe plaintiff, The Kroger Company, appeals a summary judgment in favor of the defendant, SCA Consulting Engineers, Inc. The district court found that plaintiffs claims against defendant arising from the construction of the building had prescribed. For the following reasons, we affirm.
 

 FACTS
 

 In 1996, The Kroger Company (“Kroger”) began construction of a Kroger grocery store on Youree Drive in Shreveport. The project architect was Chambliss Design Associates, Inc. (“CDA”) and the general contractor was Whitaker Construction Company (“Whitaker”). CDA retained SCA Consulting Engineers, Inc. (“SCA”) to provide structural engineering services. Professional Services, Inc. (“PSI”) provided soil analysis and L.G. Barcus & Sons, Inc. (“Barcus”) drilled and poured the auger cast piles to support the foundation. The store opened in 1997.
 

 At some point in 1998, Kroger personnel noticed that the store’s automatic doors were sticking and contacted Brett Smollen, Kroger’s assistant manager for facility engineering. Smollen visited the store and noticed a crack in the floor, which had settled approximately one to two inches from the walls. Smollen consulted with the parties involved in the project, including Whitaker, SCA and PSI, to try to determine the cause of the problem. On January 8, 1999, Brad Crane of SCA sent a letter to Kroger, through Smollen, noting that a visual observation of the store showed an area of settlement under the slab apparently caused by consolidation of soft subgrade materials. On February 9, 1999, Smollen wrote to Whitaker providing notice of store damages caused by the | ¡¿noticeable settling of the foundation. On May 26, 1999, Joe Ford of PSI provided Smollen with a proposal for subsurface materials testing. In a letter dated July 19, 1999, Crane informed Smollen that the
 
 *1165
 
 store’s floor was shifting downward because of the settlement, which seemed to be caused by the consolidation of soft, loose subgrade materials. Crane recommended corrective measures to lift the floor to the original elevation. On August 10, 1999, Smollen wrote to several companies with reference to the ongoing settlement problem, seeking bids for lifting the store slab. Smollen chose Pier-A-Mid Rehabilitation, which completed the work to lift the store floor in February 2000. After the repair, additional settlement occurred and the floor again began sinking.
 

 On September 14, 2001, Smollen wrote to the mall property manager, Trademark Property Company, describing the extensive store repairs required because of the continuing settlement problem. On September 21, 2001, Smollen wrote to Crane of SCA stating that during a store visit he had noticed wall panels rotating in the store and asking SCA to inspect the store and recommend ways to correct the problem.
 

 After the wall panel movement was observed, Kroger hired Kenneth Tand, a geotechnical and materials engineer, to analyze the problem. On October 26, 2001, Tand verbally advised Kroger of his opinion that the settling was caused by consolidation of soft clays under the foundation causing down drag on the auger cast piles. This opinion was repeated in a written report dated November 21, 2001. In March 2002, Tand issued a report concluding that the foundation had failed because the auger cast piles | adid not penetrate to the proper depth. On October 9, 2002, sonic testing showed that the auger cast piles had not been driven to the depths recommended by the SCA engineering plans.
 

 On October 18, 2002, the plaintiff, Kroger, filed a petition for damages against the defendants, Barcus, PSI, Travelers Casualty and Surety Company and St. Paul Fire & Marine Insurance Company, the insurers of the bankrupt Whitaker, and SCA. Specifically, the plaintiff alleged that SCA’s foundation design and specifications were substandard, inadequate and ambiguous regarding the correct depth at which to install the auger cast piles. This allegation is referred to as the “design phase claim.” In March 2006, the plaintiff filed an amended petition alleging that after the onset of the settling problem SCA negligently failed to remedy the situation (the “repair phase claim”).
 

 Subsequently, SCA filed a motion for summary judgment on the grounds that the plaintiffs claims had prescribed. After a hearing, the district court found that the plaintiff possessed sufficient notice to excite attention or call for inquiry about a possible tort claim by September 2001 at the latest, more than one year before the petition was filed on October 18, 2002. The district court rendered judgment granting in part the motion for summary judgment, dismissing plaintiffs design phase claims against SCA, but denying summary judgment as to plaintiffs repair phase claims. The plaintiff appeals the judgment.
 

 DISCUSSION
 

 The plaintiff contends the district court erred in granting in part USCA’s motion for summary judgment. Plaintiff argues that events occurring from 1999 to September 2001 did not provide Kroger with sufficient notice to start the running of liberative prescription.
 

 The one-year liberative prescription period for delictual actions begins to run from the date the injury or damage is sustained. LSA-C.C. art. 3492. Damage is considered to have been sustained when it has manifested itself with sufficient cer
 
 *1166
 
 tainty to support the accrual of a cause of action.
 
 Cole v. Celotex Corp.,
 
 620 So.2d 1154 (La.1993);
 
 Alexander v. Fulco,
 
 39,293 (La.App. 2d Cir.2/25/05), 895 So.2d 668. Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.
 
 Campo v. Correa,
 
 01-2707 (La.6/21/02), 828 So.2d 502;
 
 Alexander, supra.
 
 An injured party has constructive notice of his claim when he possesses information sufficient to incite curiosity, excite attention or place a reasonable person on guard to call for inquiry.
 
 Alexander, supra.
 

 In order to mitigate the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription,
 
 contra non va-lentem agere nulla currit praescriptio,
 
 which means that prescription does not run against a person unable to act.
 
 Alexander, supra.
 
 The doctrine of
 
 contra non valentem
 
 suspends the running of prescription when the circumstances of the case fall into one of four categories. Under the fourth category,
 
 contra non valen-tem
 
 is applied when a cause of action is not reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant. This category is commonly known as the ^discovery rule and provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which the cause of action is based.
 
 Alexander, supra.
 
 When prescription begins to run depends on the reasonableness of plaintiffs action or inaction.
 
 Tilley v. Kennedy,
 
 605 So.2d 226 (La.App. 2d Cir.1992).
 

 In the present case, the plaintiff does not dispute that its October 18, 2002 lawsuit was filed more than one year after the date of SCA’s alleged negligent act, since construction of the building was completed in 1997. However, the plaintiff argues in its appellate brief that its claims against SCA were not reasonably known until October 26, 2001, when an engineering report specified that the auger cast piles supporting the building had moved.
 

 In his discovery deposition, Brett Smol-len testified that he first learned of the settlement problem at some point in the summer of 1998, when he visited the store site and observed that the floor had separated approximately one to two inches from the walls. Smollen testified that on February 9, 1999, he sent Whitaker a letter describing noticeable settlement in the store that was causing cracks in the exteri- or stucco and required replacement of some windows. Later that same month, Smollen met at the store with representatives of Whitaker and PSI and asked them whether something may have happened during construction that could have caused the settlement problem. Smollen learned from Wdiitaker that the affected area of the store was built over a filled ditch and this raised the question for Smollen of whether the fill material had been compacted properly.
 

 | ^Smollen testified that in July 1999, he received a letter from SCA advising that the store’s floor continued to move downward and that apparently the consolidation of soft, loose subgrade materials was causing the settlement. SCA recommended jacking up the slab into its original position, but acknowledged that SCA could not determine the extent of future movement. Smollen testified that by August 1999, he knew that the amount of settlement had exceeded the expected range for new construction specified by PSI and he selected Pier-A-Mid Rehabilitation (“Pier-A-Mid”) to lift the store slab to its original elevation. Smollen stated that he understood that after raising the floor the settlement would cease if the “construction was done correctly.” The slab repair work was
 
 *1167
 
 completed in February 2000. However, Smollen testified that after additional significant settlement occurred during the following year, another company was contacted in April 2001 to repeat the repair of lifting the floor to the original elevation. Smollen stated that in September 2001, he observed the store wall panels moving and wrote to SCA to express concern. Smol-len testified that he knew at the time that the movement of those wall panels meant a more serious structural problem because the wall panels were supported by the underground piles.
 

 Contrary to plaintiffs assertion in its brief that it did not know until October 26, 2001, that beyond-normal settlement had occurred, Smollen acknowledged in his deposition that by August 1999, he was aware that the significant store settlement had exceeded the level reasonably expected for new construction and was continuing. In addition, Smollen stated that the |7settlement should have ceased after the Pier-A-Mid repair if the store construction had been properly done. Thus, when additional settlement occurred following the completion of that repair in February 2000, the plaintiff knew or should have known that defective construction was a potential cause of the settlement. Furthermore, Smollen testified that when he observed the wall panels moving in September 2001, he knew such movement meant that there was a structural problem involving the underground piers that supported the store’s wall panels and roof.
 

 The fact that the plaintiff consulted with other parties, including participants in the construction of the store, during the subsequent three years in which the settlement problem persisted does not support the contention that plaintiff could not have learned of the potential fault of SCA before October 2001. To the contrary, the evidence presented demonstrates the plaintiff was aware that the continuation of the settlement problem after the attempted repair in February 2000 was an indication of faulty construction. Additionally, plaintiff was aware in July 1999 that a cause of the settlement was consolidation of soft subgrade materials, the same condition which Tandy found was a cause of the down drag of the piles.
 

 Thus, this record supports the district court’s finding that no later than September 21, 2001, the plaintiff possessed sufficient information to place a reasonable person on notice of the need for inquiry as to whether the SCA-designed foundation and its component auger cast piles were a cause of the ongoing settlement problem. Consequently, the plaintiffs petition filed on October 18, 2002, was not timely and the district court did not err in |sgranting in part SCA’s motion for summary judgment, dismissing the plaintiffs design phase claims. The assignment of error lacks merit.
 

 Constructive Knowledge
 

 The plaintiff contends the district court erred in applying the definition of constructive knowledge as information sufficient to incite curiosity, excite attention or put a reasonable person on guard to call for inquiry. Citing
 
 Alexander, supra,
 
 the plaintiff argues that this definition applies only to cases involving the diagnosis of occupational disease and is not applicable here.
 

 The plaintiffs contention on appeal that the above-mentioned definition of constructive knowledge is limited to cases involving occupational disease is not supported by the jurisprudence. Louisiana courts have applied the definition in various types of tort cases, including cases involving auto negligence, defective construction and damage to immovable property.
 
 See Cartwright v. Chrysler Corporation,
 
 255 La. 597, 232 So.2d 285 (1970);
 
 Tilley, supra;
 
 
 *1168
 

 Roberts v. Murphy Oil Corporation,
 
 577 So.2d 308 (La.App. 4th Cir.1991). Thus, the assignment of error lacks merit.
 

 CONCLUSION
 

 For the foregoing reasons, the district court’s judgment is affirmed. The costs of this appeal are assessed to the appellant, The Kroger Company.
 

 AFFIRMED.